have only a certain amount of time. When it becomes yellow, you have two minutes. When it becomes red, you need to finish your sentence and you're done. Unless we're still asking questions, you have to stay up there and answer them. But if not, you're done. So, with that, we will go ahead and begin. As you all know, we had to slightly change who's first and last and so forth, but that doesn't change the fact that you need to get up and make a good argument for your side. So, we will begin with case number 24-50127, Merritt v. Texas Farm Bureau, and Avi Moshenberg. Moshenberg? Okay. You tell me which one. I said several different versions. Which one's right? Avi Moshenberg, Your Honor. Okay. Go ahead. Thank you, Your Honor. May it please the Court. My name is Avi Moshenberg, and I represent Jerry Merritt, the appellant and cross appellee here. Now, I think the Court can see from the briefing that there are a lot of legal issues that the parties disagree on, but there are two truths that the parties absolutely agree on, and they're critical here. One, that Jerry Merritt worked at least 816 hours of unpaid overtime, and two, every second of that overtime worked was permitted by Farm Bureau. And under the FLSA, if you're an employer and you have an employee and you permit them to do work for you, you have to pay them for that work. You know, what I find strange about this case is that I recognize the District Court found that Mr. Merritt was an employee and not an independent contractor, but both Merritt and Texas Farm Bureau considered him an independent contractor, and no one was thinking, oh, yeah, we've got to figure out how many hours he worked and whether he worked overtime. No one was thinking that. So it's a little bit difficult for me to think about this case, given that premise. Like, okay, they permitted him to work. Of course they permitted him to work. They thought he was an independent contractor. He thought he was an independent contractor, and he was working. So what significance does it have that you say they permitted him to work? Of course they did. Well, of course they did. The fact that they're saying that he was an independent contractor, the question is, does that excuse them? Well, the answer is, under the FLSA, there's no exception for that. Congress didn't create that kind of excuse. Now, Congress did create two good-faith exceptions. Yeah, but Congress also said you have to know that the person is working overtime. And here, that question just doesn't make any sense to me. Like, well, they knew he was working, but they knew he was, you know, managing agents. This just doesn't map on any of the cases I've looked at, in terms of knowing that someone was working overtime. Well, Your Honor, I want to push back. I think it's they know that someone's working off the clock, that they know that there's work that's happening that's not being recorded. And the case law really— But no one thought—they didn't think that's just the problem, that no one thought that he needed to be recording his time? Well, that is true, that they thought he was a contractor. But the question is, are they allowed to escape liability for that reason? And there's nothing in the FLSA that says they are. And to be very clear, the case law is clear. It's the employer's responsibility to get the classification right. It's the employer's responsibility to track time. And under the logic that's being proposed here, Your Honor, it would be—we'd be faulting merit for not classifying himself correctly, for not tracking his own time. And in cases like Flores and Hobbs that we cite in our briefing, those are misclass cases. Flores was one. And still, the court held the employer to the Mount Clements standard for when an employer doesn't track hours, because an employer doesn't track hours at their own peril, whether they thought they were contractors or not. And I want to be very clear here, Your Honor. Farm Bureau has not argued for a moment that they acted in any good faith in classifying merit as a contractor. In fact, they dropped their good faith defense. And in the record, the court can see, to avoid the issue of a jury finding they willfully violated the FLSA, they stipulated to giving merit the third year of damages. Okay. Back to knowledge. You do have—do you agree you do have to show that the employer knew that the employee was working overtime? No, Your Honor. You don't think there's a knowledge requirement in the FLSA for overtime? I don't know the plain language, Your Honor. Let's be very clear here. And this is the problem, right? As you say— No knowledge. —he reliably permitted the overtime. The statute says an employer has to pay time and a half for overtime if the employer employs the employee. An employee is defined by the FLSA as work that the employer suffers, work that the employer permits. They permitted it. It was baked into merit's contract. Farm Bureau authorized merit to work as much as he wanted to. The evidence at trial established he could work as much or as little as he wanted to. There were no bans on his overtime. There was nothing telling him he couldn't do the work. And I want to just tie the bow on this one thing, Your Honor. This Court already told us in White v. Patriot Erectors, if an employer doesn't want overtime to happen, it's incumbent on the employer to prevent it from happening. And it's more than just saying you're banned from working overtime. You have to proactively enforce a ban and make sure unwanted overtime happens. Your Honors, if they didn't want overtime, if they didn't want to risk the exposure, they needed to do something about it. Instead, they passively sat back, found out that they misclassified—not in good faith—misclassified merit. And now—and this is the biggest travesty of it all—they want all this labor to go unpaid for. To be clear, if there was good faith— That means kind of a travesty. I mean, he was making $600K a year, right? I mean, how much of a travesty is it? It's not a travesty—it is a travesty because he's denied the rights that he's entitled to on the law. Oh, okay. Your Honor, this Court heard Hewitt. I know that you were in the majority on Hewitt. And the fact that you're well-paid, it's very established, doesn't exempt you from being entitled to overtime benefits, Your Honor. And candidly, Your Honor, he should have had to work 800 hours at least of overtime to do all this. And there's nothing in the FLSA— It's my understanding that they deferred to that knowledge that he was their employee only after the district court determined that. Before that, they were saying, no, you know, he was independent—contractor. So once the judge makes a ruling, then you better walk down that path, waiting until maybe you go up on appeal to try to reverse that. But that doesn't mean that they said, oh, yeah, we knew he was an employee. They didn't know, right? Whether they knew or not is unclear from the record. But what is clear from the case law is that that is no excuse, unless you want to plead good faith. And they literally dropped good faith. Well, only after the district court ruled in his favor on that, right? Correct. But this Court's—I do want to— Okay. Now, let—oh, go ahead. You want to answer? No, that's all right, Your Honor. I want to turn to the issue of them having to kind of figure out how much he's working. If I sat in this room with all of you today, I would know how long you were here. But if I went back to my chambers and y'all went where you go, I would have no idea how long everybody in this room is working, because you're in different cities, you're in different places, you're in different this, you're in different that. And he was not somewhere where you could figure out every day what he was doing, right? That is largely true, Your Honor. But this Court tackled that same fact pattern in the Brennan case, which is a 1973 case. It's one of the first original constructive knowledge cases. There, you had basically repo guys for vehicle repossessions who were out in the field working irregular hours, as this Court put it. And what the Court recognizes, all you had to do was require truthful reporting from the employees of how much they work to get you there. But the reason there was constructive knowledge in that case is because the Court recognized that the employer knew that the reporting wasn't truthful. They knew that there was work happening that wasn't being recorded. And the moment the employer knows—and this is what the case law hits hard—the moment the employer knows that there's work happening that's not being recorded, it's on them. They have constructive knowledge of the hours that are worked, Your Honor. And so—and I want to tie back to this knowledge issue. Again, there's no knowledge requirement in the FLSA, and we shouldn't be shifting. The case law has always said, in cases like Goldberg and Castillo, cited in our brief, that it's the employer's burden to get the classification right. When you say that the evidence shows that the employer here said, you can work however much you want, what evidence are you referring to? Well, first of all, Your Honor, we're referring to the contracts, which gave Merritt total control over his schedule. There was testimony at trial that said— Okay, so contracts that say you're in charge of your schedule. Yeah, that you have total control over your hours, your schedule. That's in—and if you could look, Your Honor, it's on Record 12258, Section 2A. That's the contract, Your Honor. Now, the testimony at trial only corroborated this. The testimony at trial was that agency managers like Merritt are allowed to work as much or as little as they want to, that the Farm Bureau didn't take any steps to ban or prevent or prohibit any overtime. It was totally up to the agency managers to work as much as they wanted to. And if we're going to give meaning to the FLSA, we can't add other conditions that contradict what Farm Bureau undeniably admits, that he was allowed to do the work. The focus, the analysis here today is, was Merritt allowed to do the work? If they allowed it, they have to pay for it. And the case law, separate and apart from that, shows if you have constructive knowledge, you have to pay for it. And here, the constructive knowledge requirement comes because they didn't track his time and they knew it. Had they tracked his time, like Your Honor's example, they had required everyone to report their hours. They would have known exactly how many hours he was working. So the jury obviously found against you on this point. Okay. So what exactly are you asking? Where's the error, then? Well, the error is twofold, Your Honor. One is it shouldn't have gone to the jury, given the undisputed fact. Do you think you should have gotten summary judgment on overtime? Judgment on the evidence, Your Honor, under Rule 50, yes. But on this area— Okay. All right. So Rule 50, you should have gotten judgment as a matter of law. That's exactly right. And I think you can really pinpoint the error, because it's in the charge, that the charge said, in order to have—and again, this is a legal area and we still went on Rule 50 for this reason, but the charge highlights the real silliness of it all. The charge says, in order to have constructive knowledge of overtime, Merritt needed to notify Farm Bureau that he was working overtime. That eviscerates the whole concept. Is that not the pattern charge? No, it's not, actually. So the pattern charge says there's a duty to notify and it's linked to an employer has a right to require their employees to follow their procedures. That's in the pattern charge. It's a little fuzzy, in my mind, not clear that it's saying you have to follow the employer's requirement to report your overtime, but this charge departed from the pattern charge. It wrote a second time in the definition of constructive knowledge. It said constructive knowledge is when you knew or should have—or you should have reasonably known about the work, but if the employee doesn't report their hours, doesn't notify the employer of the work, then there's no liability. So they've eviscerated constructive knowledge. They've defined constructive knowledge as actual knowledge, and not only actual knowledge, more strict than that, actual knowledge that's gained only if the employee notifies the employer. The whole point under the case law is that the term employee is so broad, it not only includes work that the company actually knows about, it includes work that the company should have known about. Farm Bureau has taken that broad definition and narrowed it to say not only do you have to know about the overtime work, the employee has to be the one to tell you, and that's never been found in any of the cases by this Court. It doesn't exist in the FLSA. It doesn't exist in the case law. That's a new standard that this Court is being asked to apply here, and it's really—it's ironic, right? Well, I am a little curious about the fact that he goes on for years not saying that he should get overtime. Why not? Because it does seem to me that getting money is something people care a lot about. It's not like something you didn't know about and then boom, you want. He knows he wants money, so why was he not saying this sooner instead of much later? Because he thought he was the contractor, because Farm Bureau told him he was. And it was Farm Bureau's burden, to be honest, to do the due diligence and classify him correctly. We shouldn't be punishing Jerry Merritt for what Farm Bureau was required to do, which is classify him correctly. Wasn't he paid by commission? He was paid by commission, Your Honor, and some commission workers can still be employees, like this Court held in Hopkins, which dealt with agency managers just like Jerry Merritt, Your Honor. I do see that I've been using a lot of time. I'm happy to continue this issue or move on to the multiplier issue, the retail issue. Those were the other ones I really wanted to cover today. May I please ask you to address the waiver argument, EFB's argument that you waived the suffered or permitted him to work overtime argument? Yeah. I think if the Court looks at the record, you'll see this came up plenty of times below. In fact, the hearing on the Rule 50B motion, we started out by presenting the judge with a decision tree that says the first question is, did they suffer or permit the work? If the answer is they permitted it, you don't need to go any further into the analysis. This was literally the argument that we made. It was in our reply. We said literally there was a heading that said, all that's required is that you suffer or permit the work, and that's what happened here. In our Rule 50A motion, we confirmed that they employed him not only because they had constructive knowledge, but because they suffered and permitted the work. This came up over and over again below, and the Court could just see it from looking at the record, but separate and apart from that, the worst case scenario is we look at a plain error standard, which is if a farmer can show a shred of evidence they didn't permit this work, it wins. They can't do it. They don't deny every second of overtime he worked, they permit it. Under the FLSA, we're going to give employees the rights to get paid for the overtime they worked, and we can't allow Jerry Mayer to work 816 hours of overtime and not compensate him for it. The remarkable thing here is this Court has really taken strides to endorse the efforts of good-faith employers who do timekeeping policies and make sure employees report their hours and notify them of overtime and ban overtime, and what this Court did was it blessed and endorsed those practices to prevent unwanted and unpaid overtime. Under the standard Farm Bureau wants you to follow today, Farm Bureau would tell you that those insurance companies were naive, that they did too much. Bless their hearts. They didn't have to do all that work. All they really needed to do was tell their workers they can work as much as they want, misclassify them as contractors, tell them they're contractors, sit back, don't record their hours, and if anyone claims overtime, say, well, I didn't know that you were working all that time. That can't be the law. We can't incentivize employers to not track their workers' time, and we can't incentivize employers to benefit from misclassifying their workers, which is what Farm Bureau is trying to do. We happen to know, just as a general factual matter, in the insurance industry, do insurance companies ever tell agency managers or agents to track their time, just as a practice? Does that happen? I'm sure after Hopkins Cornerstone did, Your Honor, and I don't know offhand about all the indicate of every working condition. There are insurance companies that have agents and managers like GEICO that totally work for GEICO only, and they're just employees, and there's time records and time tracking. There's no reason that Farm Bureau couldn't have done it here. All they had to do, and that's the travesty of it all, all they had to do here was tell Merritt, hey, report your time. They complained that Merritt didn't, and I see I'm out of time. I want to make sure I answer your questions. They see, they keep saying, Merritt didn't tell us. Merritt didn't tell us. How was he supposed to tell them? There was no policy or procedure that says notify this person you're working overtime and claim it. How was he supposed to do it? Okay. You've saved time for rebuttal. Thank you, Your Honor. All right. We'll now hear from Casey Dallas. May it please the Court. This appeal, as the Court is aware, arises from a jury verdict based on a pattern jury instruction on actual and constructive knowledge under the FLSA. Mr. Merritt does not challenge the sufficiency of the evidence to support that verdict. Instead, he asks the Court to ignore the jury, their credibility determinations, careful weighing of the evidence at trial, which included testimony from Merritt that he didn't tell anybody he worked overtime. It included testimony from Mr. Merritt that he was the only person who would know the time that he worked. It included testimony from the companies that they had no reason to know that Merritt, who they treated through the duration of their decade-long relationship as an independent contractor, that he was working overtime because they didn't supervise his daily activities. They thought they let him run his own business. Merritt? You see, this case, I hear what you're saying. You appear to be in a trap, though, because you're saying, well, he was an independent contractor. He said he was an independent contractor. The Court here finds, no, he's an employee. And the other side points to evidence that I just asked about that said, well, the employer said you can work whenever you want. You can work as much as you want. And so, ergo, they knew that he was working overtime. I don't know what to do with that. I think the plaintiffs are engaging in an inaccurate semantic argument based on the and to do the work. It is knowledge that they are working in excess of 40 hours a week. How do we know that? We know that from the statutory language. The statutory language in the FLSA, um, 2007— Well, isn't there evidence in the record that the employer knew that, yeah, he was working hard. He was probably working over 40 hours a week. Isn't there evidence of that? No, Your Honor. What the evidence is from Texas Farm Bureau's corporate representative and its other witnesses was that it's possible he worked more than 40 hours a week. And I think we're all well aware of the case law that possibility or probability are not really evidence. And it was clear here that the jury did not particularly find that evidence valuable because at the end of the day, what was compelling was that Texas Farm Bureau didn't supervise Jerry Merritt's daily activities. And the only thing that he could ever really point to was submitting some emails late, submitting reports after hours, you know. But Mr. Merritt wasn't a time card employee, which is the standard that they seem to be continually pointing to. He was a business owner. He ran his own business. He set his own hours. Yeah, typically when you're the employee of the hours, it's particular hours, 8 to 5 and this and that, whereas he could have come in at 6 in the morning and left at 9 in the morning and taken the rest of the day and nobody would have said anything nasty to him. Correct. And Mr. Merritt himself acknowledged that he was counting in his time working, time that he spent at A&M basketball games because he was, quote unquote, recruiting during that time. So, you know, Texas Farm Bureau had no idea when he was recruiting or if he was recruiting or how long he was claiming to have spent doing that. And, you know, we wouldn't have because he didn't tell us. Now, there has been a discussion about policies and not having policies. And I want to get to the evidence of trial on that. The evidence about Farm Bureau's policies for agency managers was pretty clear. We did not have a policy for agency managers to record their time. There was a good explanation for that. We believed and he believed that he was an independent contractor for the duration of our relationship. There was testimony from our corporate representative, Mr. Brown, that Texas Farm Bureau had policies that applied to time card employees for reporting their time, that they were required to request vacation or take vacation or request overtime, et cetera. Those policies, and he was asked, Mr. Brown was asked, could those policies have been applied? Because if Mr. Merritt wanted to be viewed as an employee at any point in time, we could have applied those policies to him. Now, we didn't, again, because of viewing him as an independent contractor. Going back to this kind of question, are we now, was the error in classification one that now, as a matter of almost strict liability, requires us to pay overtime? Do we get to skip over knowledge or notice or those kinds of things because we didn't apply policies to Mr. Merritt, we didn't track his time? Counsel continues to conflate two standards. He says that not keeping records under Mount Clemens means constructive notice. There is no case that says that. Mount Clemens doesn't say that, none of this Court's cases say that, and I still haven't seen a citation to a case that would support that notion. Those are separate standards. Whether we, and obviously we did lose on the hours worked summary judgment that they filed because of the lower Mount Clemens standard. Mount Clemens does not obviate the need for knowledge of the overtime hours, actual or constructive. And with respect to actual knowledge, the testimony at trial, evidence at trial was, Mr. Merritt didn't tell us, our people didn't know, we wouldn't have a way to know. With respect to constructive knowledge, there was a lot of discussion about the case law and constructive knowledge and including the Gulf King shrimp case and Newton, a number of others from this Court. And what the Court's precedent says on constructive knowledge is that employers are charged with reasonable diligence and they're charged with the knowledge of what they would, what a reasonable employer would know considering all the facts and circumstances of the employment situation. So. Remind me, what was the jury asked with respect to knowledge, both actual and constructive? I'm on the jury, so I go back to the jury room and I say, all right, what are they supposed to have known actually or imputed knowledge, constructive knowledge? What was the jury asked? So the Court gave the jury all of the instructions that are in the pattern charge, the jury instruction on actual knowledge and constructive knowledge, the meaning of those things. The question the jury, one question that they were asked to resolve for the entire time period at issue in the case was, did, did the defendants, Texas Farm Bureau and Southern Farm Bureau have actual, have knowledge, actual or constructive, that Mr. Merritt worked overtime? And the answer, no. You know. That he worked overtime? Of the overtime work. Yeah, of the overtime work. Yeah, and I, forgive me if I'm not directly. No, that's all right. I'm just. But they were asked. I mean, yeah, they weren't asked whether he was working. Obviously, he was working. They weren't asked, did the employer know that he was working? Obviously, the employer knew that he was working. They were asked specifically about overtime. Yeah. And again, it's hard for me to think how that question is even meaningful in this case, since nobody thought that he was a time card employee. Everybody thought he was an independent contractor. I know you lost on summary judgment on that issue, but it still makes the whole case weird. I believe it was more than 40, you know, was he working more than 40 hours a week? And that is the relevant question. Okay. That somebody is working less than 40 hours a week is insignificant, because there's no obligation on the employer to pay overtime for an employer, an employee who's not working more than 40 hours a week. That's 702. So, I want to back up to two things. There was a question earlier about waiver, and waiver of this legal argument that somehow there's not a knowledge requirement. I scoured the record, and I don't know that the plaintiffs raised this at any point. I don't think that Judge Gilliland had any understanding that they were trying to argue that they did not have to prove notice or knowledge. What their argument seemed to be, the entire case, was that the lack of record keeping equaled constructive knowledge as a matter of law. The argument that I'm hearing now, admittedly, maybe I'm getting it wrong, is that because the evidence shows a permission or sufferance, they permitted, they suffered or permitted him to work. They said, well, you can work whenever you want. Ergo, they can't say they didn't know. I think that's the argument. Yeah, and that argument was not articulated how they've articulated it in the appeal, if they were trying to. Maybe if you prove that the person was suffered or permitted to work, therefore there is no knowledge requirement. Because you said, well, you can work whenever you want. I think that's the argument. They can correct me if I'm wrong. I believe that is what they're saying, and I do not believe that that argument is supported in any sense from Newton or Food Liner. And why? Well, because the FLSA, in its implementation, expects that employers and employers are going to work together on this issue. As Judge Haynes alluded to, most employees want to get paid for the work that they're doing, and they have a role to play in ensuring that they're getting fairly compensated for the job being done. Well, and as I said, a lot of places that you work, you're supposed to come in at 8 and leave at 5, and you can have 30 minutes for lunch or an hour for lunch or this or that. If you're told come when you want, leave when you want, then you could come for less of that time, and you could come at different times. You could come at midnight until 5 in the morning, and that would not be 8 hours, but whatever. So is that the difference in what they were saying? You know, like I said, in a lot of places you work kind of during the day, Monday through Friday, for certain hours, and you get some lunch, maybe you get a little time off, la, la, la. But being able to come in on a Saturday, on Sunday night, you know, Monday early morning, not on Wednesday, that's not a typical place, at least in my experience long ago when I was doing that kind of work. Now I work night and day, and I don't get any overtime. But the bottom line, is that what they were basically saying? Work when you want? Yes. Mr. Merritt set his own schedule. There were plenty of agency managers who we were aware were not working anywhere near 40 hours a week. Which could be short or long, and some of that is kind of your own ability. You know, I can read this thing really fast, or it takes me all day to read this one page. That's just different among people, right? Yes, Your Honor, and there was testimony at trial that agent productivity or the success of an agency didn't depend on putting in 800 hours. It didn't depend on that. That was not a metric that we reviewed, and it wasn't something that was correlated necessarily to success or the income that Mr. Merritt earned. I guess maybe the way to look at it is because you lost on the summary judgment with respect to independent contractor versus employer, we sort of have to accept that unless, of course, we agree with your cross appeal, right? Your Honor. But let's forget the cross appeal for a second. I know it's there before us. If we agree, we have to accept that he's an employee, right? Yes. Unless, let's accept that for the purpose of this question. Then we ask, all right, did the jury have, are we going to disturb the jury verdict on actual or constructive knowledge of overtime work? That's where we are. Yes, Your Honor. Okay. And what Mr. Merritt is asking this court to do is to ignore that jury verdict, ignore all the evidence. Yeah, he thinks it should have gotten, sure. I mean, he thinks it should have gotten Rule 50, judgment is a matter of law, whatever, on that question. And to do that, Your Honor, I believe what you have to do is ignore Fairchild, ignore Vaughn-Newton, ignore Vaughn-Freewald, throw out the pattern charge, and find essentially that employers who don't keep records or misclassify are strictly liable in the end of the day. The jury could have found that there was actual or constructive knowledge, right? Yes, Your Honor. It could have. There was evidence. Maybe the jury, if I'm on the jury, I'm saying, you know, you didn't even keep record, time records. You knew, right? But the jury didn't find that. Correct, Your Honor. Okay. Thank you. And we'll now hear from Markham Leventhal, some more on this arena. Good morning, Your Honors. There are problems with this case, but none of them have anything to do with the jury verdict. The problems with this case, and Judge Duncan, you said you found this strange, weird, because there were five different reasons why the defendants should have gotten summary judgment. This case never should have gotten to trial to begin with. And I'm going to touch on one. That's the cross-appeal points, right? Conditional cross-appeal, on which the case could be affirmed on other grounds. And one of the, I think, most important issues in the cross-appeal is the commission exemption. And I know, Judge Duncan, you were on the case in Taylor, which dealt with the commission exemption. This is a classic case where the commission exemption should have applied, and that should have been the end of the story. I mean, here's a guy making over half a million dollars a year, being paid 100 percent of commissions, and met all the requirements of the statute. And what the judge ruled was that the entire insurance industry can't use the commission exemption. And the magistrate judge, we consented to a magistrate here, he agreed, essentially, with arguments that the plaintiff's lawyers had made, without really analyzing the issue. And so, if you want to know, does the commission exemption apply here, obviously the first place you go is the statute, right? And you read the statute, and the judge essentially ruled the insurance industry couldn't use the commission exemption. Why? And the judge looked back at a very, very old Supreme Court case that had nothing to do with the commission exemption, and regulations that had been displaced by new Department of Labor rulings, and bought off on this argument that the insurance— Is this a retail basis argument? Yeah, exactly. So, here are two main points. Number one, insurance policies are goods under the FLSA. Goods are defined to include insurance policies. And number two, the definition of retail is not plain English. It's the sale of things to customers for their own use. In other words, it's not wholesale. All right? Moving from those two facts to the statute, what does the statute say? First of all, the commission exemption is subsection I of section 207, right? So, where does the obligation to pay over time come from in the first place? It comes from 207A, the same section, right? 207A applies to these defendants here because it applies to all employers. It applies to employers that are, you know, paying—are employing people to work for over 40 hours. You scroll down to subsection I, which is the commission exemption. It also applies to all employers. That's how it starts out. No employer shall be deemed to violate subsection A if the requirements are made. Those requirements are, number one, they be paid 50 percent or more in commissions, which that is clearly established here. He was paid 100 percent of commissions. And number two, the compensation has to be more than one and a half times the minimum wage. And here, the compensation was off the chart. I agree with you on the face of it. That's an appealing argument. You have some regs—some regs that make that difficult, right? Am I to one reg? I don't think so. Well, I know you don't think so, but— Because the most recent reg is—were passed in 2020, and those made it crystal clear. The whole point of those regulations in 2020 was to make it crystal clear that the commission exemption applies to all industries and all businesses. And what it did, you may recall, is there was this whole ancient list of different businesses. And one of the—it was dozens of businesses that the department had declared didn't have a retail concept, as Judge, I think, Posner said in Alvarado, whatever that means. I mean, the statute doesn't require a retail concept. It requires a retail establishment, right? So if you're selling—you have a—and these are not transactions of an insurance company. These are not, like, internet transactions or calling up an 800 number. The only way that companies sell the products are through these community-based agencies, right? So they are basically—and Merritt called them his stores in testimony at trial, because that's what they were. You could walk in off the street. You could buy an insurance policy, homeowners, automobile, life insurance, et cetera. So when you accept, which I think is a— Do you have to be a member of the Farm Bureau? Yeah. So it's kind of like a Costco situation where you come in. If you're not already a member of the Farm Bureau—and anybody can walk in and buy the policy. You sign up. There's a small fee, $25 to $50 fee, and you become a member of the Farm Bureau. And that certainly doesn't mean it's not retail. So the only other requirement was it had to be a retail establishment, which it clearly was. I mean, there's no way to look at those agencies if you accept that insurance policies are goods. They're being sold to members of the general public in the community. So I think the commission exemption clearly applies. And back to the regulations. So that 2020 regulation was the most recent promulgation on the commission exemption. And I think it eliminated all of the—and also the older regulations didn't even apply to the commission exemption. They applied to Section 213A2 of the FLSA, which had been repealed. That section was known as the intrastate business exemption, and it also used that phrase, retail or service establishment. So you had all these old regulations that were actually based on legislative history of a different statute. So the 2020 rule was the most recent rule on the commission exemption itself. And I'm running out of time, but I did want to say that the other grounds for summary judgment that should have been granted was on the administrative exemption, the highly compensated exemption, and the executive exemption. And the court ruled that the salary basis test—like, in this case, they admitted that Mr. Merritt, who was managing five different offices, met all the duties requirements. So he was serving in an executive administrative capacity under the language of the statute, but the judge disqualified him under the salary basis test. And unlike Mayfield, we're not arguing that you can't have a salary basis test. We made two arguments. One is that he satisfied it because his compensation was predetermined to always exceed the minimum, and none of his compensation was based upon his work. Your time is up. Thank you very much. Thank you. And I do want to—go ahead. I want to clarify that while I do work a lot, and we all do, and at all different times, it's not 24 hours a day. Now, we'll hear the rebuttal. I don't work overtime. It's a lot, but it's not 24 hours. Thank you, Your Honors. A few points on rebuttal here. First of all, I want to be absolutely clear. We are not asking this Court to change the law at all on this suffer and permit and notice issue. We have scoured every single case this Court has ever written on that issue. We think the Court got it right 100% of the time. We're not looking to change anything. What we're asking this Court to do is to treat this case, first of all, to follow the plain text of the statute and not create a duty to notify that literally contradicts. It says you don't get overtime even—you don't have to pay for overtime even when you permit it, separate and apart from that. We want you to follow the three cases here—Brennan, White v. Patriot Erectors, and the five-star automatic case, which all show when the employer knows that there's work being done off the clock, they have constructive knowledge. That's different from the other cases that they have cited, too, that this Court issued like Newton, Fairchild, and most of von Friedwald, where the employer credibly said they didn't know there was time being worked off the clock. And what the Court did—and when you look at those analyses, the question was, the Court determined, like in cases like Fairchild-Friedwald, von Friedwald, and Newton, that the employer was actually doing its best efforts and making all the reasonable strides possible to make sure unwanted and unpaid overtime didn't happen. And when the employee secretly worked off the clock, the Court said, you don't have to pay for it. But in Brennan and White v. Patriot Erectors and five-star, when the employer knew there was work happening, it wasn't being recorded, the employer had constructive knowledge of all of the overtime that was worked. Because if they wanted to know how many hours he worked, all they had to do was follow their statutory duty to track their time. And the fact is that just because they misclassified them is not an excuse. If you look at Flores and Hobbs, this Court still holds employers to a standard of requiring to keep records even if they misclassify their employees. Because employers misclassify their employees at their peril. It's the employer's job to get the classification right. It's the employer's job to track time. If they don't do those things, it shouldn't be the employee's fault. It shouldn't result in the employee working unpaid overtime and not getting paid for it. We lost a trial because the charge said that to have constructive knowledge, there has to be a duty to notify. That doesn't exist anywhere. But the reality is we don't need to go to the trial and what happened at the trial in terms of what the jury did. The answer is when everyone agrees the work was permitted, when everyone agrees they knew he was working and didn't track it, we established as a matter of law that he was employed for those hours. Is there a knowledge requirement? The answer is sometimes. When there's a debate about whether the work was permitted, when there's a debate about whether the work was permitted, what this Court did in cases like Fairchild-Von Friere . . . How would they know that he's not lying if we went ahead and said, oh, yeah, okay, they need to give for the extra time? Because it's totally only something he knows. How would we know he's not lying? Well, an employer . . . How would they know? Right. An employer can . . . an employee can lie. Right? And I'm not saying it's allowed. What I'm saying is it happens, and the employer's not necessarily on the hook for that. There's all sorts of estoppel things that exist under the FLSA about employees that mislead their employers about the time they work. There is no evidence. In fact, we asked Farm Bureau, did Merritt mislead you about his hours, and they said no. So it happens. It doesn't mean the employer should be responsible for it, but there's nothing here to show. He didn't report his time, he didn't track his time because Farm Bureau didn't do those things, even though it was required to under the law, and we can't incentivize employers to misclassify their workers, to not track their time. We're going to be opening the door to all sorts of new escape hatches to liability that Congress never intended to create. And finally, on the 2020 rule, just to be clear, the 2020 rule literally says to figure out whether you have a retail concept, go look at our other regulations, and then in ever have insurance be a retail concept. And that wasn't just the DOL riffing, that was the DOL honoring what the Supreme Court of the United States said in Mitchell, in the Idaho Sheets case, which is Congress never intended the retail standard, the retail or service establishment standard, to apply to insurance companies. So that's why the retail exemption can't apply, and also for the other reasons that we talked about in our brief. Farm Bureau had a duty to classify their workers correctly. They had a duty to track time. Just because they did those two wrongs doesn't give them a right now to escape liability. Merit worked overtime, the FLSA entitled them to get paid for that overtime, and it's for that reason we ask that this court reverse the trial court's judgment on the permission issue and the multiplier issue and affirm the rest of the court's judgment. Okay. Thank you, both sides. We appreciate your argument. Hope you all get a little time off to enjoy your time here in New Orleans.